Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 CR 451 | **DATE** | 5/17/2000 |
| **CASE TITLE** | UNITED STATES vs. WAYNE R. CICHOWICZ | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Defendant's motion to withdraw plea of guilty is denied. Sentencing reset for August 23, 2000 at 2:00 p.m. Presentence investigation report ordered.**

(11) ☒ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAY 18 2000 | |
| | Notified counsel by telephone. | date docketed | 33 |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| DW | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES OF AMERICA,

v.　　　　**DOCKETED**

WAYNE R. CICHOWICZ.　**MAY 1 8 2000**

No. 99 CR 451
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

On 17 November 1999, the defendant Wayne R. Cichowicz entered a plea of guilty to a

multi-count indictment returned on 17 June 1999. There was no plea bargain. After the plea, a

presentence investigation report was prepared on 2 March 2000 and revised on 21 March 2000.

On 11 April 2000 his counsel told me:

> I began representing Dr. Cichowicz in early 1998 and I found him to be an
> emotional . . . and psychological mess. That situation worsened as the divorce,
> which had been filed I think in '96, wended its way through the courts, and the
> problems that were being encountered and being dealt with, with his children and
> with his wife. After the return of the indictment in June of '99, I would say I
> started to see some gradual improvement. But from the summer of '98, until
> about the time of the return of the indictment, I simply wasn't able to speak with
> him intelligently. He could not focus on the case.

> I noticed an improvement. Both I and the psychologist did not feel there was
> anything that you might call insanity . . . present, that would affect his ability to
> deal with the case. I was made optimistic about that view, as the weeks went on.
> The divorce was then granted I believe in August of '99, and I felt that we were
> then able to make some progress in the case. The plea was entered in November of
> 1999.

> In retrospect, I think that he may have felt sort of beaten down by the entire
> combination of circumstances, including this case. In recent months, he has been
> much more alert, much happier, since his engagement to a woman. And as the
> motion recites, he called me late Thursday and said he would like to withdraw his
> plea, if that could be done.

Pleas can be withdrawn only upon a showing by the defendant of "[a] fair and just reason." Fed. R. Crim. P. 32(e). There are not too many cases on the subject, because there are not too many attempts to withdraw. I am to consider whether the defendant has asserted innocence and whether he dawdled in seeking withdrawal. Also I must weigh the cost to the court and prejudice to the prosecution. Finally I must look to the knowing voluntariness of the plea and the degree to which the defendant was assisted by counsel. *See generally* CHARLES ALAN WRIGHT, 3 FEDERAL PRACTICE AND PROCEDURE § 538 (2d ed. 1982 & Supp. 2000).

The defendant has dawdled. He did not seek withdrawal of his plea until after he had received the probation officer's view of the guideline applicable to his case. On the three or four questions that could have gone either way, the defendant received the short end of the stick on all but one. His level was increased based upon the government's loss calculation and on the basis of more than minimal planning. He lost acceptance of responsibility. The government lost only its claim of obstruction of justice. It all adds up to 15-21 months. If the government had all its own way, the guideline would have been 21-27 months. If the defendant had all his own way, the guideline would have been 4-10 months.[1] Now, the probation officer's word is not final, but it has proven to be a good predictor of the probable outcome of guideline disputes. And the timing is significant. Courts have always been leery of plea withdrawals attempted after sentence has been imposed, because we have not wanted defendants to "be encouraged to plead guilty to test

---

[1] I leave to one side the possibility that the decision to withdraw the appeal was influenced by the fact that in the week of April 6 (when defendant called his counsel to ask about plea withdrawal), the Court of Appeals decided that abuse of trust by a medical provider might increase the guideline in this case to 27-33 months. Defendant denies knowing of this, and I believe him on this point.

the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe." *Kadwell v. United States,* 315 F.2d 667, 670 (9th Cir. 1963).

The prejudice to the prosecution seems to be limited to the cost of the effort of trial, and that effort is likely to be more than trivial since this was a case of many small acts of fraud and proof will require the calling of many witnesses. The inconvenience and cost to the court is roughly the same, a significant expenditure of time. These are not overwhelming or decisive costs — this is not a case involving months of trial. Nor does it appear that the government is prejudiced by having witnesses or evidence disappear beyond recovery.

The plea was clearly voluntary. I have the transcript and have re-read it and, unlike some pleas, I have a vivid recollection of it. There are not many blind pleas in this courthouse, and I recall them quite easily. Defense counsel is highly experienced and highly capable, and it is clear from his statements that he made appropriate efforts to counsel his client appropriately after properly reviewing the case. His client does not dispute the adequacy of counsel. The plea procedure established the voluntariness of the plea and the competency of the defendant to make it. Defendant was under medication at the time of the plea and at the time of the arraignment and, on both occasions, I established to my satisfaction, that the prescribed anti-depressants and tension reducers did not render him less than competent. The drugs had been used for two or three years. Defense counsel found his client to be troubled, but his ability to concentrate on the case returned at the time of indictment (bringing to mind Samuel Johnson's famous observation of things that concentrate the mind). Indeed, neither the defendant, nor the psychologist who testified, nor his counsel, claims that the defendant was mentally impaired when he decided to plead guilty. Despite this I have considered that defendant might have been unable competently to

decide whether to plead, and I am satisfied now, as I was at the time of the plea, that he was not so disabled.

The defendant says, in an odd sort of way, that he is innocent. He repeats a kind of mantra: "I just want to prove my innocence." His oft-repeated phrase is one of the reasons that I reconsidered in retrospect the issue of his competence at the time of the plea. Of course, the defendant does not have to prove his innocence in the ordinary course of a criminal case. But his statements do make sense in the context of an attempt to withdraw an appeal on the grounds of asserted innocence. "Assertions of innocence must be buttressed by facts in the record which support a claimed defense." *United States v. Salgado-Ocampo,* 159 F.3d 322, 326 (7th Cir. 1998); *United States v. Gomez-Orozco,* 188 F.3d 422, 425 (7th Cir. 1999) ("claim must be supported by credible evidence"). I heard the evidence offered by the defendant — his own testimony. It is difficult to find it credible, and I think a jury would find the defense incredible and, perhaps, dishonorable. The defendant says he made errors in the billing, but he had nothing to do with the billing — all he did was attend to patients. Who then made the errors? "My mother is my secretary. She has been with me for 21 years, a volunteer. . . . She is the one who bills the patients. And she is the one that collects the monies." The presentence report confirms that defendant's mother served as his secretary without compensation. So the defendant blames his mother for over $100,000 worth of mistaken billing (the mistakes running in defendant's favor), the profit of which "mistakes" went partly or wholly into the defendant's pocket, not into his mother's pocket. Attacking one's own mother is seldom a rewarding tactic. Moreover, there are billing documents that the defendant typed and documents in his handwriting. The defendant does have an explanation for this: his mother does not type and she would ask him to type something up so it would "look nice." Moreover, defendant's professional office does not have a

copier, so his mother "would ask me to make a copy of everything that she had done" and the defendant would do this by hand. The story would be very difficult to believe even if it were not the case that both the submitted and retained invoices that are the subject of the indictment are, in many cases, in the handwriting of the defendant.

The inherent difficulties of the proposed defense are not made up for by the defendant's manner of testifying. It is not merely that he speaks in a flat, unpersuasive tone — he would not be the first witness to tell the truth in an unconvincing way. It is that, when asked to account for some of the problems in his testimony (like the inconsistency between his statements at the time of the plea and his current testimony), he retreats to "I don't recall." There are too many "I don't recalls" for him to be credible as a witness. I don't believe him.

The rest of the defense is that he was economically coerced into the offense by an official of the Town of Cicero, but I do not think that a threat to lose the town's naprapathy business would qualify as a defense under any law of which I am aware. This is particularly true when a good deal of the money from the unjustified invoices wound up in defendant's pocket. Duress or coercion defenses require the threat of bodily harm, not the threat of financial harm. Necessity defenses do not require the threats of bodily harm, but the necessity works only where the threatened harm is, in a moral sense, greater than the harm perpetrated by the offense. Losing the income from Cicero is not the kind of harm that necessitates perpetrating fraud against the town. The defendant was not a man who stole another's food to save himself from starvation. *See generally* W. LAFAVE AND A. SCOTT, 1 SUBSTANTIVE CRIMINAL LAW §§ 5.3, 5.4 (1986). The defendant may understand the limitation of the defense because he testified that he believed that the town official had threatened him with death, because another person who had been at odds with the official had died in what defendant began to believe was an arranged accident. This,

however, is not the imminent threat of death or bodily harm required by the defense of duress. The defendant faced, at most, a vague threat of future harm. *United States v. Arthurs,* 73 F.3d 444 (1st Cir. 1996). In any event, the defendant had the time to seek protection from authorities. *United States v. Sotelo,* 94 F.3d 1037 (7th Cir. 1996); *United States v. Alicea,* 837 F. 2d 103 (2d Cir. 1988).

I believe that the defendant wishes to change his plea simply because he has changed his mind about pleading guilty. I believe he thinks, rightly, that the burden of his conviction will fall primarily on his two young children, whose mother is not an appropriate stand-in for the defendant. In my opinion, his decision to stand trial may make his guideline worse for him and will not much delay his incarceration even if the guideline stays the same. He has a different view of the matter and may have persuaded himself that he has a decent chance for an acquittal. He is wrong about that but, even if he did, he is not entitled to withdraw his plea just because he has changed his mind and wants to go to trial. This is not a fair and just reason to withdraw a plea of guilty. If it were, then all pleas of guilty could be withdrawn as a matter of right.

The motion to withdraw the plea of guilty [30-1] is denied.

ENTER:

James B. Zagel
United States District Judge

DATE: **MAY 17 2000**